1  Binford Road Community
Binford Road, CA
2  Binfordrd@gmail.com

**FILED**

MAY 28 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

3          UNITED STATES COURT

4          NORTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| 5 | Case No.: Number |
| 6  Bonnie Silveria, Elgio Limeta, Sean Derning, Binford | **C24-03181** |
| 7  Community | EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACT |
| 8 | |
| 9          Plaintiff(s) | |
| 10  vs. | JURY TRIAL DEMANDED |
| 11 | |
| 12  Marin County Sheriffs Department, Michael Thompson, Julia Barnes, County of Marin DOES 1-10 | |
| 13 | |
| 14 | |
| 15 | |
| 16          Defendant ( s) | |

## Plaintiffs Complaint and Application For TRO In A Nutshell

1. Binford Road is home to a community of several dozen individuals and families who live in motor homes and tents in unincorporated Marin County. The County has received millions of dollars from the State of California to get everyone on Binford Road into housing by August 2026. The County has instituted a number of program on Binford Road, such as case management and trash clean ups.

2. While the County of Marin is doing some good things on Binford, two of its lead employees – Deputy Michael Thompson and Julia Barnes - have started terrorizing residents by summarily seizing and destroying peoples valuable, unabandoned belongings on a regular basis during "clean ups".

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

3. Importantly, the County of Marin promises to store peoples belongings for 90 days. [See Dec Sean Derning, Exhibit A, and Exhibit B]. However all Plaintiffs to this action had their valuables taken into "storage", and then tried to retrieve those belongings – only to find out all their belongings had been destroyed. [See Declarations Derning, Silveria, Limeta]

4. Also importantly – plaintiffs **Elgio Limeta** and **Bonnie Silveria** own beloved dogs. **Ms. Siveria** and **Mr. Derning** have seen their dogs get run over on Binford Road – because it is a narrow median where people are parked, a fenceline on Rush Creek, and Binford Road. Both **Limeta** and **Silveria** have had their doggie enclosures and shade structures seized by Julia Barnes, DOES 1-10 – putting their dogs in forseeable harm of either being run over by cars OR being forced to be locked inside their homes in the midst of summer without air conditioning – which would be cruel. **Mr. Limeta** and **Ms. Siveria** seek to have a reasonable amount of space to have enclosed spaced ofr their dogs.

5. **Plaintiff Sean Derning** also brings a special claim on account of his disability. He has a chronic injury in one of his hands caused by complications by a staph infection. He also suffers from PTSD and anxiety. In order to manage his disabilities and regain dexterity in his hands, he engages in occupational therapy working on bicycles and other mechanical endeavors. As a result, he has asked Deputy Michael Thompson and Julia Barnes for an accommodation to have extra space to pursue occupational therapy. Instead of engaging in the interactive process, Michael Thompson has told Mr. Derning that he and any other County of Marin agent can come and seize Mr. Derning's property at anytime. **Mr. Derning** seeks additional space to pursue occupational therapy, and to compel defendants to engage in the interactive process under the **ADA.**

6. **Plaintiff Binford Community** is an unincorporated membership based association composed of residents of Binford Road. **Binford Community** seeks the equity sought above for all residents of Binford Rd. While Plaintiffs are representing themselves *pro se* and cannot represent **Binford Community**, we are actively seeking counsel and request the court appoint an attorney to represent **Binford Community** to provide equitable release for our whole community.

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

# Jurisdiction and Venue

This court has original federal question jurisdiction over these claims under 42 USC § 1983 and Americans With Disability Act.

# Plaintiffs

Sean Derning

*[handwritten: 1735 Borges Street Unit B Vallejo, CA, 94590]*

*[handwritten: BINFORDRD@GMAIL.com]*

Bonnie Silveria

*[handwritten: 1305 Leafwood Dr #2 Novato CA 94954]*

*[handwritten: BINFORDRD@gmail.com]*

Elgio Limeta

*[handwritten: 1305 Leafwood Dr #2 Novato CA 94954]*

*[handwritten: BINFORDRD@GMAIL.COM]*

# Defendants

**DEFENDANT: County of Marin -** is a division of the State of California the currently operates Binford Road as a permitted place for people experiencing homelessness can reside.

Mariling Address: 3501 Civic Center Drive

San Rafael, CA 94903

Attorney: Brian Washington <bwashington@marincounty.org>

**DEFENDANT: Sheriff Deputy Michael Thompson** is the *de facto* manager of Binford Road who interfaces between residents, the County of Marin, Julia Barnes, and private contractors working on Binford Road providing housing services, trash removal, and bathroom services

Mailing Address:  1400 Los Gamos Drive, San Rafael, CA 94903

Attorney: Brian Washington bwashington@marincounty.org

**DEFENDANT: Marin County Sheriffs Department** "MCSD" : Is the sheriffs department of Marin County and is working underneath the County of Marin's instruction in managing Binford Road.

Mailing Address:  1400 Los Gamos Drive, San Rafael, CA 94903

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

1  Attorney: Brian Washington <bwashington@marincounty.org>

2  **DEFENDANT: Julia Barnes** individually and in her official capacity as Supervising Hazardous Material's

3  Specialist is an employee of the County of Marin who leads private contractors to seize and destroy Plaintiffs

4  property.

5  1600 Los Gamos Drive

6   San Rafael, CA 94903

7  Attorney: Brian Washington <bwashington@marincounty.org>

8  **DEFENDANTS DOES 1-10**: are the private contract crew that works with Julia Barnes to seize and destroy

9  plaintiffs belongings.

10 # Standard of Review For TRO and Preliminary Injunction

12
13  1.  A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without

14      notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that

15      immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be

16      heard in opposition." Fed. R. Civ. P. 65(b)(1)(A)." Quoting from *Sacramento Homeless Union et al v City*

17      *of Sacramento et al* 2:22-cv-01095-TLN-KJN Dkt. No. 39 *(*August 3rd 2023 Order GRANTING TRO). To

18      obtain a preliminary injunction, the plaintiff has the burden to "establish [1] that he is likely to succeed on

19      the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the

20      balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res.*

21      *Def. Council, Inc*., 555 U.S. 7, 20 (2008)). Under the sliding-scale approach adopted by the Ninth Circuit in

22      Alliance for the *Wild Rockies v. Cottrell,* 632 F.3d 1127, Courts must weigh these factors using a "sliding

23      scale" approach such that where there are "serious questions going to the merits," a preliminary injunction

24      may still be issued so long as "the balance of hardships tips sharply in the plaintiff's favor and the other

25      two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Alliance for the Wild*

26      *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011.) To determine whether to issue a TRO, the courts

28  EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR
    INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY
    ACTJURY TRIAL DEMANDED

in the Ninth Circuit apply the same analysis used to evaluate a motion for preliminary injunction. *McCarthy v. Servis One, Inc*. 2017 U.S. Dist. LEXIS 32622, at 9-10(N.D. Cal. Mar. 7, 2017)

# Plaintiffs Have Given Defendants Notice FRCP 65(a)(1)

1. Plaintiffs emailed defendants Counsel Brian Washington prior to the filing of this motion. [See Declaration Derning ¶18.

# First Cause of Action – Violation 42 USC §1983 Fourth Amendment Unreasonable Seizure. *ALL PLAINTIFFS* Against ALL DEFENDANTS:

2. *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (C.D. Cal. 2011) the Ninth Circuit held that homeless peoples "have a legitimate expectation of privacy in their property," the district court further held that "[t]he property of the homeless is entitled to Fourth Amendment protection." Lavan also found that homeless people whose property is seized are entitled to 90 days of storage under Cal Civ Code 2080-2080.10 holding that summary destruction of momentarily unattended property needed to be stored because "California Civil Code § 2080, which requires that " any person or public entity or private entity that finds and takes possession of any ... personal property" must make a reasonable effort to return it or turn it over to the police, who must notify the owner and hold it for at least 90 days, see Cal. Civ.Code § 2080; Candid Enters. Inc. v. Grossmont Union High Sch. Dist., 39 Cal.3d 878, 885, 218 Cal.Rptr. 303, 705 P.2d 876 (1985) (" if otherwise valid local legislation conflicts with state law, it is preempted by such law and is void" ) *id*.

3. This doctrine applies to all personal property, including to large bulky items "We see no meaningful distinction between the destruction of property enjoined in *Lavan* and the destruction of property enjoined here. The fact that Plaintiffs' items are larger than sixty gallons does not reduce their possessory interests in those items." *Garcia v. City of Los Angeles*, 11 F.4th 1113 (9th Cir. 2021) "Because warrantless . . . seizures are per se unreasonable, the government bears the burden of showing that a warrantless . . . seizure falls within an exception to the Fourth Amendment's warrant requirement." *Id*.

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

4.  Here, Defendant Julia Barnes, DOES 1-10, implemented as a pattern and practice for the County of Marin, a custom of summarily seizing and destroying the property of Plaintiffs during weekly cleanups, and has done so on multiple occasions.

5.  During these clean ups, Julia Barnes was acted in concert with deputies from the Marin County Sheriffs Department, including but not exclusive to, Deputy Michael Thompson. Julia Barnes would use the presence of Marin County Sheriff Department employees to intimidate plaintiffs, by insinuating if they resisted the unlawful destruction of their property that they would be arrested.

6.  Because of this, all Plainitiffs are subject to, or have lost property because of,  the unlawful custom and practice by Julia Barnes, DOES 1-10, and the County Marin, Marin County Sheriffs Department, and Deputy Michael Thompson. For example earlier this year the following happened:

7.  Plaintiff Sean Derning lost his bike trailer he uses to transport water and other necessities taken, along with many other items. Within the 90 day window to retrieve his belongings Sean Derning called Deputy Michael Thompson to retrieve his belongigns to bring them to a storage unit. Michael Thompson told him all his possessions had been thrown out. When he called Michael Thompson and the County of Marin to retrieve it he was informed that it had been destroyed. **[See Declaration Sean Derning]**

8.  Plaintiff Elgio Limeta had many of his valuables seized – including water, batteries, bicycle, an enclosure for his dog, and other necessities. Mr. Limeta put everything he wanted stored into a pile and told Julia Barnes he wanted it stored. Afterwards, he immediately texted Deputy Michael Thompson to find out how he could retrieve his belongings. He was informed he would not be able to get his belongings back. **[See Declaration Elgio Limeta]**

9.  Plaintiff Bonnie Silveria  had all of her property around the trailer taken **[See Declaration Silveria]**. Within 90 days she tried to get it back – but she was told all of her property had been thrown out. *id*

10.  Based on information and believe, member of the Binford Community have also experienced these same injustices.

11.  Through her pattern of conduct, Julia Barnes as a custom of the County of Marin, violated Plaintiffs Fourth Amendment rights by depriving them of their property without a warrant. No warrant exception exigency existed  to justify summary destruction of Plaintiffs property, or an exception to Cal Civ Code §2080.

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

12. Defendants conduct was especially unreasonable, because it contradicted official County of Marin Notices posted before the clean up days that promised Plaintiffs that their property would be placed in storage.

# Second Cause of Action – 42 USC § 1983 Fourteenth and Fifth Amendment Due Process (All Plaintiffs Against All Defendants)

1. Plaintiffs reincorporate the preceding paragraph as if full set foth herein.

2. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Any significant taking of property by the State is within the purview of the Due Process Clause." Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). "Application of this prohibition requires the familiar two-stage analysis: We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.' " Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

3. "As we have repeatedly made clear, "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." Clement v. City of Glendale, 518 F.3d 1090, 1093 (9th Cir.2008)."*Quouting from Lavan*

4. Here, Julia Barnes, Michael Thompson, DOES 1-10, acting as is custom for the County of Marin and Marin County Sheriffs Department, have behaved like "thieves in the night" because they have made public postings promising Plaintiffs their property would be stored.

5. Contrary to their representations, Defendants summarily destroyed the property and had no intention of storing their property.

6. Plaintiffs were never given a pre or post deprivation hearing to dispute the taking of their property. As a direct proximate result, their property was destroyed.

7. Plaintiffs were never given just compensation for the

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

Cause of Action – 42 USC § 1983 Violation of Fourteenth Amendment State Created Dangers Doctrine. ( *ALL PLAINTIFFS* Against ALL DEFENDANTS:

1. Plaintiffs reincorporate the preceding paragraphs as if fully set forth herein.

2. Under the holding of *Kennedy v. City of Ridgefield,* 439 E 3d 1055 (9th Cir. 2006), the Ninth Circuit recognizes liability under substantive due process where a state or local official act to place a person in a situation of known danger with deliberate indifference to their physical safety." To prove a cause of action of under the State Created Danger Doctrine, a Plaintiff must prove (1) "the officers' affirmative actions created or exposed h[im] to actual, particularized danger that []he would not otherwise have faced"; (2) "the injury was foreseeable"; and (3) "the officers were deliberately indifferent to the known danger. *"* *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The third element, deliberate indifference, requires "proof that a municipal actor disregarded a known or obvious consequence of his action" which is "a stringent standard of fault." Id. at 1274 (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974.

3. Defendant Julia Barnes, DOES 1-10, Deputy Michael Thompson as custom of the County of Marin and MCSD took affirmative actions against **All Plaintiffs** depriving them of the ability to have enclosures for their dogs on Binford road, as well as to have shade structures for themselves and their pets.

4. It was forseeable that Plaintiffs and their animals needed the enclosures for the safety of their dogs. Plaintiffs homes are parked inches from a busy road. Plaintiffs do not have air conditioning and they cannot lock their dogs in doors all the time, especially during the summer. It was forseeable that if a dog did not have an enclosure, it could be hit by a car.

5. As a direct result of Defendants affirmative conduct of seizing Bonnie Silveria's dog gate, and depriving Sean Derning of his means to have a dog enclosure, both Plaintiffs dogs were hit by cars and died.

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

6.  Plaintiffs Silveria and Limeta still both own dogs, and there dogs are likely to get hit by cars or suffer unnecessarily unless they have some small enclosed area that has shade, water, and food.

7.  All Plaintiffs need the ability to have some modicum of shade, outsideo of the trailers, because they lack air conditioning and it gets hot during the summer.

8.  It is forseeable that if Plaintiffs are not allowed to have some kind of shade and seats outside of their trailers, they will suffer from dehydration and heatstroke, likely to cause injury or death.

# Cause of Action – 42 USC § 1983 Fourteenth Substantive Due Process. Against DEFENDANTS:

9.  Plaintiffs reincorporate the preceding paragraphs as if fully set forth herein.

10. "Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with the rights implicit in the concept of ordered liberty."'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998)); *see also Brittain v. Hansen*, 451 F.3d 982, 990-91 (9th Cir. 2006). "Substantive due process is ordinarily reserved for those rights that are 'fundamental.'" *Id.* at 990 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997)).

11. In *Deschamps v City of Sausalito et al* , the court held that the City's intention to lock two cats into a small cat carrier at a city-sanctioned homeless encampment, and forcing their owner into a smaller, violated substantive due process by arbitrarily subjecting those cats to cruel conditions. The Court ordered the City to permit the owner of the cats to have a small back yard for the cats, and to allow him to keep his tent.

12. Here, Plaintiffs Elgio Limeta and Bonnie Silveria are in a similar condition. They need a small amount of space to keep their dogs in an enclosed shaded area.

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

13. Subjecting the dogs to live exposed, without any fence, next to a busy road, is likely to cause the dogs injury or death. Keeping the dogs locked in hot trailers is also unacceptable. Defendants conduct constitutes animal cruelty.

# Cause of Action – Violation of Title II Americans With Disabilities Act

1. Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*, applies to all programs and activities of state and local government. "[T]itle II applies to anything a public entity does." 28 C.F.R. Part 35, App. B, Section 35.102; *accord Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ("the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does") (citing and quoting *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998); *Lee v. City of L.A.*, 250 F.3d 668, 691 (9th Cir. 2001) ("the ADA's broad language brings within its scope 'anything a public entity does.'") (citation omitted). This means that the law's prohibitions cover police activities and the enactment and enforcement of local ordinances including those relating to unhoused people. *See, e.g., Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), *reversed in part on other grounds, City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015) (Title II covers arrests); *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 956 (N.D. Cal. 2020) (applying Title II to portions of Oakland Municipal Code creating rent control program); *Glover v. City of Laguna Beach*, No. SACV 15-01332 AG (DFMx), 2017 U.S. Dist. LEXIS 167501 (C.D. Cal. June 23, 2017) (granting class certification in case challenging municipality's homeless program under the ADA and Section 504 of the Rehabilitation Act).

2. Under Title II of the ADA, public entities may not adopt laws, policies, or practices that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(3), (8); *see also* 28 C.F.R. § 35.150(a) (a public entity must "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by, people with disabilities."). A regulation discriminates under the ADA when "its enforcement burdens [the disabled] in a manner different and greater than it burdens others." *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 959-60 (N.D. Cal. 2020) (citing and quoting from *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)). Where a regulation so burdens disabled people, the plaintiff

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACT JURY TRIAL DEMANDED

need not show that the public entity intentionally discriminated on the basis of disability. *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) ("Congress could not have intended to limit the [ADA's] protections and prohibitions to circumstances involving deliberate discrimination. … Rather, the ADA attempts to eliminate the effects of … benign neglect, apathy, and indifference.") (citing and quoting from *Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995)).

3.  Further, public entities must make reasonable modifications to their policies, practices, and procedures as needed by people with disabilities. 28 C.F.R. § 35.130(b)(7); *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 961 (N.D. Cal. 2020); *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) ("[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact.") (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276-77 (2d Cir. 2003)). A disabled individual may trigger this obligation by making an explicit request for accommodation, as many of the plaintiffs here have done. Moreover, public entities may not be passive in their approach to disabled individuals as far as the provision of accommodations is concerned. Rather, Title II mandates that entities act affirmatively to evaluate the programs and services they offer and to ensure that people with disabilities will have meaningful access to those services. *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015); *see also Coker v. Dall. Cty. Jail*, Civil Action No. 3:05-CV-005-M (BH), 2009 U.S. Dist. LEXIS 62978, at *51 (N.D. Tex. Feb. 25, 2009) ("Because public entities must make modifications that are necessary to avoid discrimination on the basis of disability, liability does not depend on evidence of purposeful discrimination.").

4.  Here, **Plaintiff Sean Derning** suffers from a chronic injury to his hand, post traumatic stress disorder, and anxiety. To manage his disabilities he engages in occupational therapy working bicycles and other work that improves the dexterity in his hand and his mental well being. **[See Declaration Derning]**

5.  **Plaintiff** has requested an accommodation from **Michael Thompson** that he needs extra space to do occupational therapy to manage these disabilities.

6.  **Michael Thompson**, who is the lead manager of Binford for both the County of Marin and MCSD, refused to engage in the interactive process under the ADA. Instead **Deputy Thompson** told **Mr. Derning** that the **County** can come at anytime and take his belongings.

EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION, VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 USC § 1983 AND AMERICANS WITH DISABILITY ACTJURY TRIAL DEMANDED

7. **Defendants** are failing to engage in the interactive process to find an accomdation for **Mr. Dernings** disability.

# Plaintiff(s) Will Suffer Irreparable Harm, and the Balance of Equities and Public Interest Tip Sharply In Their Favor

8. Plaintiffs reincorporate the preceding paragraphs as if fully set forth herein.

9. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions,* 872 F. 3d 976, 994 (9th Cir. 2017). "Being exposed to safety and health threats by dint of governmental action with short notice meets the irreparable-injury element". Cf. Santa *Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1145 (N.D. Cal. 2021). (Quoting from *Blaine et al v California Department of Transportation* , ND- 3:22-cv-04178-WHO, Dkt No 40) Order GRANTING TRO. "[p]laintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction" because the public has an interest in upholding the federal law. *Ariz. Dream Act Coal.*, 757 F.3d at 1069.

# Prayer for Relief

1. The court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining defendants from violating Plaintiffs rights as pleaded above. Pending a hearing, Plaintiffs request defendants planned clean up be enjoined.

2. Defendants plead that court hearings take place via Zoom because we don't have accessible transporation to the court houses in San Francisco and Oakland.

3. The court appoint all plaintiffs counsel under 28 USC § 1915.

4. The court award actual, compensatory, and punitive damages for the damages alleged above.

5. The court award attorney fees and cost of suit.

# Verification

We are the plaintiffs in the above action representing ourselves without the aid of an attorney. We swear under penalty of perjury that the above is true and correct to our own knowledge.

Signature     *Bonnie Silveria*
Printed Name  Bonnie Silveria
Date          May 27, 2024

Signature     *Alegro Lemota*
Printed Name
Date          05-27-2024

Signature
Printed Name
Date          50 27 2024

1  Sean Derning
   Binford Road, CA
2  Binfordrd@gmail.com

3

4                                UNITED STATES

5                      DISTRICT OF NORTHERN CALIFORNIA

6

7  BONNIE SILVERIA, SEAN DERNING, ELIGO          Case No.: TBD
   LIMETA, BINFORD COMMUNITY

8  v                                              DECLARATION OF SEAN DERNING IN SUPPORT
                                                  OF TRO AND PRELIMINARY INJUNCITON
9  MARIN COUNTY SHERIFFS DEPARTMENT,
   MICHAEL THOMPSON, COUNTY OF MARIN, JULIA
10 BARNES, DOES 1-10

11

12   1. I have been a licensed contractor since 2007 focusing on doing remodels. I came to Binford Road around

13      Spring of 2022 after traumatic period in my life and medical issues.

14   2. About two years ago I suffered a staph infection to my left hand that developed into an infection that has

15      made me lose sensation in my left hand and has decreased my ability to do fine movements.

16   3. I suffer from Post Traumatic Stress Disorder and have anxiety attacks.

17   4. While on Binford Road I have been working on my bikes is occupational therapy for my physical and mental health

18      work on bikes, help my neighbors repair things. It gives me confidence, manages my PTSD, and prevents

19      me from experiencing anxiety attacks.

20   5. Because of my occupational therapy, the space around motor home often has bicycles and mechanical parts

21      that I use for my projects and repair jobs.

22   6. Working on these things keeps me health and sane. It also allows me to have bicycles, bicycle trailers, that

23      I need to go and fetch water and food. I do not have a locomotive. So I need my bikes to go to and from my

24      town.

25   7. Working on bikes also helps heal my hand as a result of the staph infections long term impacts on its

26      dexterity. It has effected my ability to work. Working with my hands and doing fine motor movements to

27      repair bicycles and other things helps me regain fine motor dexterity in my hands.

28

DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PRELIMINARY INJUNCITON - 1

8.  On multiple occasions, I have explained to Deputy Michael Thompson of the Marin County Sheriffs Department that my work on the bicycles is a way to manage my disabilities, and I've requested that I be allowed to have some extra space to do this activity. None of my belongings block the road.

9.  Michael Thompson nor anyone one from the County of Marin has engaged me on my request for disability accommodations. Instead, Michael Thompson literally told me that he can come to my home at any time, and seize any of my belongings that are outside of the trailer. I live in constant fear that my possessions are going to be seized and destroyed. The County of Marin never stores any of the belongings they take.

10.  Around December 16th of 2023, the County Marin came and took literally all of my belongings around my trailer. Michael Thompson was there, and people from the County of Marin. They just took everything that was outside. It was me moving my property into my trailer to stop them from taking it. I had to put so much in the trailer I couldn't even really live in it.

11.  I lost my bike trailer that I relied on to get water and food back home. The nearest grocery store is more than a mile away. I lost so many things.

12.  The notice the County posted said they were going to store my property for 90 days for me to retrieve it. That was a lie. I called to get my belongings back from the County well within the 90 day window. I even had access to a storage unit to put my belongings in so it wouldn't go back to Binford. Didn't matter. The county representative said they had thrown out all of my belongings. Total loss.

13.  Not only that, I had a puppy that got ran over by a car on the road. I did not have a gate on my fence at the time.

14.  Around March 10th the Sheriffs posted the attached notice up and down Binford Road stating they would to do another clean up on Monday, March 27th 2024. Attached in Exhibit A is a copy of that notice

15.  Around March 15th, the Sheriffs posted another notice up and down Binford Road stating there would be another clean up on March 31st, 2024. Attached in Exhibit B is a copy of that notice.

16.  Its unclear if these are two separate clean ups or when the County is coming.

17.  My motor home is about 45 feet by 103 inches wide. Attached in Exhibit C is a picture of my home.

18.  On May 27th, I sent a notice to defendants counsel Brian Washington expressing our intent to file our application for TRO and preliminary injunction. Attached In Exhibit D is a copy of that notice.

DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PRELIMINARY INJUNCITON - 2

1    I swear the foregoing under penalty of perjury,

2    /s/ Sean Derning

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PRELIMINARY INJUNCITON - 3

EXHIBIT A

Date Posted: May 10, 2024 Time Posted: **3 PM** Posted By: Gil Sanchez

# 15 Day Notice of Cleanup and Property Removal

Marin Municipal Codes 13.13.030, 13.13.230, 13.13.240
California Streets & Highways Code §§ 1480.5, 1481, 1482

On Monday May 27, 2024, the County will clean-up all items stored in the public right of way located on the water side near the southern end of Binford Road. These items obstruct or prevent the use of a county highway by the public and will be subject to immediate removal if not removed in the next 15 days. All personal property remaining in the public right of way on March 27, 2024, will be removed. Personal property that is perishable or hazardous will be immediately disposed. Non-hazardous, non-perishable personal property will be stored for 90 days. **If the property is not claimed during the 90-day storage period, it will be disposed.**

Property may be claimed by calling 415-473-4663, Monday thru Friday, from 9:00 AM to 4:30 PM. There is no charge to claim your property.

EXHIBIT B

Date Posted: May 15, 2024 Time Posted: 8 AM    Posted By: Gil Sanchez



# 15 Day Notice of Cleanup and Property Removal

Marin Municipal Codes 13.13.030, 13.13.230, 13.13.240
California Streets & Highways Code §§ 1480.5, 1481, 1482

On Friday May 31, 2024, the County will clean-up all items stored in the public right of way located on the water side near the southern end of Binford Road. These items obstruct or prevent the use of a county highway by the public and will be subject to immediate removal if not removed in the next 15 days. All personal property remaining in the public right of way on May 31, 2024, will be removed. Personal property that is perishable or hazardous will be immediately disposed. Non-hazardous, non-perishable personal property will be stored for 90 days. **If the property is not claimed during the 90-day storage period, it will be disposed.**

Property may be claimed by calling 415-473-4663, Monday thru Friday, from 9:00 AM to 4:30 PM. There is no charge to claim your property.

Marin County Community Development Agency, Planning Division
Code Compliance
3501 Civic Center Dr. - Room 308
San Rafael, CA 94903

EXHIBIT C



EXHIBIT D

5/27/24, 9:01 PM                    Gmail - FRCP 65 Notice: Cease and Desist Summary Destruction of People's Property on Binford Notice

 **Gmail**                                          **Binford Rd <binfordrd@gmail.com>**

---

## FRCP 65 Notice: Cease and Desist Summary Destruction of People's Property on Binford Notice
1 message

---

**Binford Rd** <binfordrd@gmail.com>                                        Mon, May 27, 2024 at 4:48 PM
To: "bwashington@marincounty.org" <bwashington@marincounty.org>

Marin County Counsel, Mr. Brian Washington,

This email is to provide you notice that I and my co-plaintiffs intend to file an ex-parte application TRO in US District a court to halt the destruction of our property this week.

Your clients, Julia Barnes, Deputy Michael Thompson, and their trash contractor have been engaging in the unlawful seizure and destruction of people's property. Even though your clients promise to store property (as per state law), they destroy it. We have asked for things back, only to be told it's all gone.

We anticipate filing for a temporary restraining order and preliminary injunction against the County of Marin on Tuesday.

If you wish to resolve this matter informally, you must publish officially an ordinance that halts any and all removal of property from Binford Road by any agent of the government, either directly or by proxy.

Upon your compliance with this demand, we may begin negotiations about compensation due to us without opening a lawsuit. Otherwise, I look forward to seeing you in court.

Truly yours,

Sean Derning
Binford Community Association

Bonnie Silveria
Binford Road, CA
Binfordrd@gmail.com

UNITED STATES

DISTRICT OF NORTHERN CALIFORNIA

| | |
|---|---|
| BONNIE SILVERIA, SEAN DERNING, ELIGO LIMETA, BINFORD COMMUNITY | Case No.: TBD |
| v | DECLARATION OF BONNIE SILVERIA DECLARATION IN SUPPORT OF TRO AND PRELIMINARY INJUNCTION |
| MARIN COUNTY SHERIFFS DEPARTMENT, MICHAEL THOMPSON, COUNTY OF MARIN, JULIA BARNES, DOES 1-10 | |

1. I Bonnie Silveria do declare the foregoing

2. I have full knowledge of what is in this declaration and if called testify could and would do so competently.

3. I have lived on Binford for over a year. I have been working with Downtown Streets Team and they've helped me pay my registration on my truck, and pay to get it out of impound after it was stolen. I am a part of the program out here at Binford and work with Taicha.

4. A few months ago I had a really nice yard around my trailer where my dog could play it. It was beautiful. I had potted plants. Turf grass. A barbeque. Patio furniture with an awning over it. It was really pretty no junk or anything. I even got compliments about it from everyone.

5. About four months ago, I got a 15 day notice to clear my property. I started trying to downsize but I didn't have storage. I thought I was fully compliant with what they wanted because I reduced it.

6. The day came, and I believe it was Julia Barnes, came to my property. The clean up crew working under Julia Barnes said my yard was the nicest yard they had to tear up.  They then tore it up. They took my fencing, my potted plants, my awning, my artificial grass which is real expensive, a little gate I around as well,  a new chipper motor that was worth about $250 dollars. All of this was really nice stuff. None of it was trash or hazardous material. There are other things they took as well.

DECLARATION OF BONNIE SILVERIA DECLARATION IN SUPPORT OF TRO AND PRELIMINARY INJUNCTION - 1

7. The notice they gave before the clean up said they were going to store property for 90 days. But before 90 days was up, I got a call from the Down Town Streets team outreach worker named Diego. He said I should call Deputy Michael Thompson to get my possessions because the County of Marin was planning on disposing it soon. I immediately after getting called by Diego, I called Deputy Michael Thompson. He said all of my property had already been thrown out.

8. When the County took away my possessions they took away my fence I used to keep my dogs safe from running into the road, and so they have safe space outside where it is not so hot. A few weeks after they took the gate, my dog Chupa was run over and killed on Binford Road because he ran out into the street because we are parked literally next to the road. If my fence had still been up, he would not have been run over. That was the only area he could play safely.

9. I have to set up a new fence around to keep my other dog safe. But if the Court does not stop the County of Marin, they will take this one too. I also have coolers with food, and water jugs, and a sun umbrella among other things around my trailer that I need for survival purposes but I don't have enough space in my trailer for them.

10. Attached in Exhibit A is a picture of my home on Binford Road.

11. Attached in Exhibit B is a picture of my dog and my dog fence.

I swear the foregoing under penalty of perjury,

/s/Bonnie Silveira

Date: *Bonnie Silveira*

*May 27, 2024*

DECLARATION OF BONNIE SILVERIA DECLARATION IN SUPPORT OF TRO AND PRELIMINARY INJUNCTION - 2

EXHIBIT A



EXHIBIT B



1 | Elgio Limeta
Binford Road, CA
2 | Binfordrd@gmail.com

3

4 | UNITED STATES

DISTRICT OF NORTHERN CALIFORNIA

5

6

7 | BONNIE SILVERIA, SEAN DERNING, ELIGO | Case No.: TBD
LIMETA, BINFORD COMMUNITY

8 | v | DECLARATION OF ELGIO LIMETA\ IN SUPPORT
IN
9 | MARIN COUNTY SHERIFFS DEPARTMENT,
MICHAEL THOMPSON, COUNTY OF MARIN, JULIA
10 | BARNES, DOES 1-10

11

12     1.   I Elgio Limeta do declare

13     2.   I have full knowledge of what is in this declaration and if called to testify could and would do so

14         competently.

15     3.   I have lived on Binford Road a long time. I live in a small house I built myself where I live with my dog

16         named Charlie. Attached in Exhibit A is a picture of my home.

17     4.   Around March of 2024 Sheriffs posted notices to clean up.

18     5.   Women came out leading a clean up crew, I believe this is Julia Barnes. She told me I had to lose a fenced

19         in area I had for my dog. she told me separate things into two piles – one pile for trash and another things

20         we wanted to keep. I sorted them into two piles. The way she speaks is very mean.

21     6.   I wanted a lot of things stored. They took my fridge, my burner for cooking, two solar panels. Three of my

22         four large batteries because  Julia said I could only keep one. They took really expensive bike rims, and lots

23         of expensive things. They took the frame my bike that I had just finished painting. They lift the rim and

24         some other parts of the bike. They took so much. All of these things were things I wanted to retrieve later

25         and I put them in a pile to keep.

26     7.   Also I was working on a gas blower that I was fixing for a friend. They took the blower – but they left the

27         gas tank with me.

28

DECLARATION OF ELGIO LIMETA\ IN SUPPORT IN - 1

8.

9.  I had jars of water that I keep potable water to drink. They took all of my water to drink and they threw it all out. They wouldn't store my water.

10. Literally the same day they took my belongings I texted and called Deputy Michael Thompson. He told me that there was nothing he could do getting my things out of storage. Everything I wanted to keep is gone. Now I have pay my friend now because I was responsible for the blower.

11. Now my dog I likely to run out in the street and get killed. Sean Derning and Bonnie Silveria have both had their dogs run over on the street. Cars go very fast and our homes are literally next to the road.

12. I had a fence around my tent that would allow my dog to be outside and not to run in the road. They took away my dogs fence, so its not safe for my dog.

13. Right now, I do not know what County of Marin will do at this next clean up. They could very well just grab another section of my home. Anything they take they are going to destroy.

14. Their destruction of my dog place was arbitrary, because even with the fenced in area for the dog my campsite is much smaller than other peoples sites on Binford Road. Sean Derning has a motor home that is 45 feet long

15. I do not have a lot of things On May 25th I measure the size of my campsite, even with the dog enclosure it was only 35 feet long and about 10 feet wide. So I was taking much less space than Sean Derning, whose trailer is 45 feet by 103 inches. So even though I took less space then him, they destroyed lots of my property. They are likely to do it again, because the women who runs the clean ups is very mean and acts in aribitrary way.

I swear the foregoing under penalty of perjury

/s/Elgio Limeta

05-27-2024

DECLARATION OF ELGIO LIMETA\ IN SUPPORT IN - 2





Hi Mike this is Eligio I wanna find out if I can get my bike frame is the blue one . I yes star restore it . And I really appreciate if you can tell my where I can go pick it up . Everyone here we are surviving with something . For my restore that bike is to put it for sale try to make some money and live routher in go steal somewhere

Also the blower somebody ask me to fix it now you guys take it I have to pay for it.

Can you please call me and let me know . If I can go pick them up please

I'll stop by and talk to you shortly.

1   Bonnie Silveria
    Binford Road, CA
2   Binfordrd@gmail.com

3

4                                  UNITED STATES

5                        DISTRICT OF NORTHERN CALIFORNIA

6

7   BONNIE SILVERIA, SEAN DERNING, ELIGO          Case No.: TBD
    LIMETA, BINFORD COMMUNITY

8   v                                             PROOF OF SERVICE

9   MARIN COUNTY SHERIFFS DEPARTMENT,

10  MICHAEL THOMPSON, COUNTY OF MARIN, JULIA
    BARNES, DOES 1-10

11

12

13      1.  I Robbie Powelson am over the age of 18 and not a party to this action.

14      2.  On May 28th, 2024 I served by electronic mail copies of "Plaintiffs Ex-Parte Application For TRO And

15          Preliminary Injunction, Verified Compalaint For Injunctive Relief And Damages Under 42 USC §1983

16          and Americans With Disability Act" to the attorney for defendants, Marin County Counsel Brian

17          Washington, at his email at address Bwashington@marincounty.org.

18      3.  I swear the foregoing under penalty of perjury.

19              /s/Robbie Powelson

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE - 1