1 BRIAN E. WASHINGTON, COUNTY COUNSEL
Jenna Brady, Chief Deputy County Counsel (SBN 233440)
2 Jacy C. Dardine, Deputy County Counsel (SBN 294294)
3 OFFICE OF THE COUNTY COUNSEL,
COUNTY OF MARIN
4 3501 Civic Center Drive, Room 275
San Rafael, CA 94903
5 Tel.: (415) 473-6117
6 Fax: (415) 473-3796
jenna.brady@marincounty.gov
7 jacy.dardine@marincounty.gov

8 Attorneys for Defendants
9 MARIN COUNTY SHERIFF'S OFFICE,
MICHAEL THOMPSON, JULIA BARNES, and
10 COUNTY OF MARIN

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15

16 BONNIE SILVERIA, et al.,                Case No.: 3:24-cv-03181-AMO

17            Plaintiffs,
                                          **DEFENDANTS' NOTICE OF MOTION**
18      v.                                **AND MOTION TO DISMISS PLAINTIFFS'**
                                          **COMPLAINT; MEMORANDUM OF**
19 MARIN COUNTY SHERIFF'S DEPARTMENT,     **POINTS AND AUTHORITIES IN**
20 et al.,                                **SUPPORT**

21            Defendants.                 Hearing Date:    November 7, 2024
                                          Time:            2:00 p.m.
22                                        Location:        San Francisco Courthouse
                                                           Courtroom 10 – 19th Floor
23                                                         450 Golden Gate Avenue
                                                           San Francisco, CA 94102
24                                        Judge:    Honorable Araceli Martinez-Olguin

25

26

27

28

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

    I.     INTRODUCTION AND FACTUAL BACKGROUND ....................................... 2

    II.    RELEVANT PROCEDURAL HISTORY .......................................................... 4

    III.   LEGAL STANDARD ..................................................................................... 4

    IV.   LEGAL ARGUMENT .................................................................................... 5

          A.    Plaintiffs' Claims on Behalf of the "Binford Community" are Improper. .............. 5

          B.    Plaintiffs' First and Second Causes of Action Related to the Alleged Seizure of Personal Property from Binford Road Fail. .......................................................... 6

          C.    Plaintiffs' Monell Claim Is Similarly Insufficient................................................. 11

          E.    The Fifth Cause of Action for Alleged Violation of the Americans With Disabilities Act Fails. ............................................................................................ 15

    V.    CONCLUSION ............................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

Cases

*Anderson v. Warner,*
    451 F.3d 1063 (9th Cir. 2006) ..................................................................................... 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................. 4, 5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................. 4, 5

*Bryan Cnty. v. Brown,*
    520 U.S. 397 (1997).................................................................................................... 14

*C.E. Pope Equity Trust v. U.S.,*
    818 F.2d 696 (9th Cir. 1987) ................................................................................... 3, 5

*City of Grants Pass v. Johnson,*
    No. 23-175, 2024 WL 3208072 (U.S. June 28, 2024) ......................................... 3, 10, 11

*Cobine v. City of Eureka,*
    250 F.Supp.3d 423 (N.D. Cal. 2017) ..................................................... 3, 8, 12, 13

*Cohen v. City of Culver City,*
    754 F.3d 690 (9th Cir. 2014) ..................................................................................... 15

*Crowder v. Kitagawa,*
    81 F.3d 1480 (9th Cir. 1996) ..................................................................................... 16

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.,*
    489 U.S. 189 (1989).................................................................................................... 12

*Duvall v. Cnty. of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001) ............................................................................... 3, 15

*Estate of Condon,*
    65 Cal.App.4th 1138 (1998) ........................................................................................ 6

*Garcia v. City of Los Angeles,*
    11 F.4th 1113 (9th Cir. 2021) ............................................................................... 7, 8, 9

*Godecke v. Kinetic Concepts, Inc.,*
    937 F.3d 1201 (9th Cir. 2019) ..................................................................................... 4

*Herrera v. L.A. Unified Sch. Dist.*,
   18 F.4th 1156 (9th Cir. 2021) .................................................................. 14

*Hous. is a Hum. Right Orange Cnty. v. Cnty. of Orange*,
   No. 19-cv-388, 2019 WL 6481311 (C.D. Cal. Aug. 12, 2019) .......................... 14

*Jansko v. City of Oakland*,
   No. 3:23-cv-00035(WHO), 2023 WL 3029256 (N.D. Cal. April 19, 2023) ............... 9

*Kennedy v. City of Ridgefield*,
   439 F.3d 1055 (9th Cir. 2006) ................................................................ 13

*L.W. v. Grubbs*,
   974 F.2d 119 (9th Cir. 1992) ............................................................ 12, 13

*Lavan v. City of Los Angeles*,
   693 F.3d 1022 (9th Cir. 2012) ............................................................... 7, 8

*Long v. Cnty. of Los Angeles*,
   442 F.3d 1178 (9th Cir. 2006) ............................................................. 6, 11

*Marguia v. Langdon*,
   61 F.4th 1096 (2023) ..................................................................... 12, 14

*Martinez v. High*,
   91 F.4th 1022 (9th Cir. 2024) ................................................................ 12

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978) ........................................................................... 11

*Munger v. City of Glasgow*,
   227 F.3d 1082 (9th Cir. 2000) ............................................................... 13

*Patel v. Kent Sch. Dist.*,
   648 F.3d 965 (9th Cir. 2011) ............................................................. 12, 14

*Penilla v. City of Huntington Park*,
   115 F.3d 707 (9th Cir. 1997) ................................................................ 13

*Reed v. City of Emeryville*,
   568 F.Supp.3d 1029 (N.D. Cal. 2021) ....................................................... 14

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*,
   402 F.3d 962 (9th Cir. 2005) .................................................................. 9

*Simon v. Hartford Life, Inc.*,
   546 F.3d 661 (9th Cir. 2008) ............................................................... 5, 6

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No.: 3:24-cv-03181-AMO

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .................................................................. 5

*Sullivan v. City of Berkeley*,
    383 F.Supp.3d 976 (N.D. Cal 2019) ..................................................... 8, 9

*Tennessee v. Lane*,
    541 U.S. 509 (2004)................................................................... 16, 17

*Townsend v. Quasim*,
    328 F.3d 511 (9th Cir. 2003) ............................................................. 17

*U.S. v. Richie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................. 5

*Vinson v. Thomas*,
    288 F.3d 1145 (9th Cir. 2002) ........................................................... 16

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
    32 F.4th 852 (9th Cir. 2022) ......................................................... 16, 17

*Wills v. City of Monterey*,
    617 F.Supp.3d 1107 (N.D. Cal. 2022) ................................................... 14

**Statutes**

28 U.S.C. § 1654........................................................................ 5, 6

42 U.S.C. § 12132......................................................................... 15

42 U.S.C. § 1983......................................................................... 4, 6

Cal. Bus. & Prof. Code § 6125 ................................................................ 6

Cal. Bus. & Prof. Code § 6126 ................................................................ 6

Cal. Sts. & High Code § 1480.5(a)-(c) ......................................................... 7

**Rules**

Federal Rules of Civil Procedure 10(c) ........................................................ 5

Federal Rules of Civil Procedure 12(b)(6)................................................... 1, 4

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on ___November 7___ 2024, at 2:00 p.m., in Courtroom 10 (19th Floor) of the above-entitled court located at 450 Golden Gate Avenue in San Francisco, California, defendants MARIN COUNTY SHERIFF'S OFFICE (erroneously sued as "Marin County Sheriff's Department"), MICHAEL THOMPSON, JULIA BARNES, and COUNTY OF MARIN (collectively "County") will, and hereby does, move to dismiss the complaint filed by BONNIE SILVERIA, ELGIO LIMETA, SEAN DERNING, and BINFORD COMMUNITY (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities In Support, all other filed and records in this action, and any further evidence or argument the Court may receive at or before the hearing.

Dated:  July __25__, 2024

OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN

By:  */s/* Jacy C. Dardine
————————————————————
Jenna Brady
Jacy C. Dardine
Attorneys for Defendants
MARIN COUNTY SHERIFF'S OFFICE,
MICHAEL THOMPSON, JULIA BARNES, and
COUNTY OF MARIN

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION AND FACTUAL BACKGROUND

3

For several years, individuals have resided on Binford Road in unincorporated Marin.  Most

4 people live in recreational vehicles parked in the narrow area between the edge of the road and the Rush

5 Creek Wildlife Area.  Although parking on Binford Road is not permitted for more than 72 hours, the

6 County of Marin ("County") has focused its efforts on connecting individuals with shelter and

7 supportive services, substantially increasing resources along Binford Road over the past year.  See

8 Complaint, Dkt. No. 1, at 1:20-23; O'Malley Declaration, Dkt. No. 13, at ¶¶ 2-7.  County departments

9 and community partners work jointly to conduct individual outreach to residents and provide monthly

10 service fairs.  *Id.*  In addition, County provides portable bathrooms and handwashing stations, regular

11 trash pickup, and RV pump out services.  *Id.*  These efforts have resulted in the County housing more

12 than twenty-six individuals since August 2023.  *Id.*

13

Although County has made progress on Binford Road, the health, safety, and environmental risks

14 remain.  Binford Road is a two-lane road with no sidewalks that is surrounded by the bay to the east and

15 commercial buildings to the west.  It is dangerous for cars and people walking along the road because of

16 how close the vehicles and personal property are to the road.  To protect health and safety, County asks

17 residents to keep their personal property out of the right-of-way and conducts routine cleanups to ensure

18 the area remains clear of debris and other hazards.  Barnes Declaration, Dkt. No. 12, at ¶¶ 3-8.  Before

19 County conducts cleanups, it provides 15-day written notice to the individuals living on Binford Road

20 stating that property remaining in the right-of-way will be removed and stored for 90 days before being

21 disposed.  Complaint, Dkt. No. 1, at 2:1-4, Derning Declaration, Dkt. No. 1, at 15:14-17, 18, 20; Silveria

22 Declaration, Dkt. No. 1, at 25:20-22; Limeta Declaration, Dkt. No. 1, at 31:17-18; Barnes Declaration,

23 Dkt. No. 12, at ¶¶ 3-8.  The notice also provides the phone number individuals may use to retrieve their

24 stored property.  *Id.*  However, these measures are not a long-term solution.  County's goal is to enable

25 housing options for the current population along Binford Road and remove the encampment.

26

Plaintiffs Bonnie Silveria, Elgio Limeta, and Sean Derning ("Plaintiffs") live on Binford Road.

27 They allege County has "seized" their personal property in violation of the Fourth and Fourteenth

28 Amendments.  Plaintiffs seek to enjoin County from "summarily seizing and destroying peoples

2

valuable, unabandoned belongings" during cleanups, and, although not entirely clear, for County to provide "additional space" for pet enclosures and "occupational therapy" for "working on bicycles and other mechanical endeavors."  In addition to their own claims, Plaintiffs seek to assert claims on behalf of "the Binford Community" – a purported "unincorporated membership based association."

As discussed in greater detail below, Plaintiffs cannot assert claims on behalf of the Binford Community because Plaintiffs are not attorneys, and it is well-established that a non-lawyer "has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987).  Moreover, the conclusory allegations in the Complaint are insufficient to state claims under the Fourth or Fourteenth Amendment for the alleged "seizure" of personal property from the County's right-of-way, and courts have consistently rejected "state created danger" claims like the one at bar because there are no "particular allegations" that County "put Plaintiffs in an inherently dangerous situation" apart from the "generalized dangers of living on the street." *Cobine v. City of Eureka*, 250 F.Supp.3d 423, 433 (N.D. Cal. 2017).  The claim based on the Americans with Disabilities Act is similarly deficient because there are no allegations demonstrating that County has excluded Plaintiffs from participating in any County program, service, or activity.  *See Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001).

Plaintiffs' have not stated a valid claim against Defendants.  Although County has decided not to enforce various provisions of the California Vehicle Code and Marin County Code with respect to vehicles parked on Binford Road at this time, this discretion does not extend to the placement of personal property in the right-of-way because it is a public safety and environmental hazard.  The Constitution does not require local government to provide unhoused individuals with "additional space" – or any space for that matter – to store personal property, pet enclosures, or self-described "occupational therapy."  As our Supreme Court recently noted:  "Homelessness is complex.  Its causes are many.  So may be the public policy responses required to address it." *City of Grants Pass v. Johnson*, No. 23-175, 2024 WL 3208072, at *7 (U.S. June 28, 2024).  Where, as here, County has implemented policy to protect the individual rights of the unhoused population on Binford Road, County, and its employees, are not liable for maintaining the safety of the surrounding community.

Accordingly, Defendants respectfully request this Court grant the Motion to Dismiss for the

reasons set forth below.

## II.    **RELEVANT PROCEDURAL HISTORY**

On May 28, 2024, plaintiffs Bonnie Silveria, Elgio Limeta, and Sean Derning ("Plaintiffs") filed their combined Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction and Verified Complaint for Injunctive Relief and Damages against defendants Marin County Sheriff's Office (erroneously sued as "Marin County Sheriffs Department"), Michael Thompson, Julia Barnes, and County of Marin ("Defendants").  *See* Complaint, Dkt. No. 1.  The Complaint also purports to assert claims on behalf of the "Binford Community," an "unincorporated membership based association composed of residents of Binford Road."  *See* Dkt. No. 1, at 2:21-25.

The Complaint asserts causes of action for: (1) Violation of 42 U.S.C. § 1983 (Fourth Amendment "Unreasonable Seizure"); (2) Violation of 42 U.S.C. § 1983 (Fifth and Fourteenth Amendment "Due Process"); (3) Violation of 42 U.S.C. § 1983 (Fourteenth Amendment "State Created Danger Doctrine"); (4) Violation of 42 U.S.C. § 1983 (Fourteenth Amendment "Substantive Due Process"); and (5) Violation of Title II of the Americans with Disabilities Act.  Plaintiffs seek a temporary and permanent injunction and damages.

On May 28, 2024, this Court granted Plaintiffs' *ex parte* application for a temporary restraining order prohibiting Defendants from "taking any further action against Plaintiffs in connection with the '15 Day Notices of Cleanup and Property Removal,' posted on May 10, 2024, and May 15, 2024," and scheduled the matter for a hearing on May 30, 2024.  *See* Dkt. No. 9.

On May 30, 2024, the parties appeared at the hearing.  The Court denied Plaintiffs' application for a temporary restraining order and motion to appoint counsel but granted Plaintiffs' motions for leave to proceed in forma pauperis.  *See* Dkt. No. 15.

## III.    **LEGAL STANDARD**

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim when a complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such a theory.  *Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 557)*.*

In considering a motion to dismiss, the court may review documents incorporated by reference into the complaint and judicially noticed documents.  *U.S. v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also* Fed. R. Civ. Proc. 10(c).  Where judicially noticeable documents or documents referenced in the complaint conflict with conclusory allegations in the complaint, the Court should ignore the conflicting allegations of the complaint.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  However, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.  LEGAL ARGUMENT

### A.  Plaintiffs' Claims on Behalf of the "Binford Community" are Improper.

Plaintiffs' attempt to assert claims on behalf of the "Binford Community" are improper and should be dismissed because Plaintiffs are proceeding in this matter in forma pauperis, and they are not licensed attorneys.  It is well-established that a non-lawyer "has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987).

"The causes of action on which civil litigants may proceed without counsel are limited by statute." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).  In federal court, "parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C. § 1654.  "Significant is the language contained in the statute that limits the authorization of civil litigants to 'plead and conduct *their own cases personally*.'" *Simon*, 546 F.3d at 664 (emphasis in original).  As the Ninth Circuit in *Simon* explained, "courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity." *Simon*, 546 F.3d at 664 (citing numerous cases where courts have dismissed claims brought by pro se plaintiffs in representative capacities).  "It is well

established that the privilege to represent oneself pro se provided by § 1654 is personal to the litigant and does not extend to other parties or entities. *Id.*[1]

Even assuming the "Binford Community" meets the requirements under Rule 17(a) as a "real party in interest," which it does not, and has "capacity to sue" under Rule 17(b), which it also does not, Plaintiffs appear to acknowledge that they cannot bring a claim on behalf of an unincorporated association because they are not attorneys and are not represented by counsel. *See* Complaint, Dkt. No. 1, at 2:21-25. Specifically, the Complaint notes that "Plaintiffs are representing themselves pro se and cannot represent the Binford Community." *Id.* As noted above, this Court denied Plaintiffs' request to be appointed counsel, and Plaintiffs have apparently been unable to find counsel to represent them. *See* Motion for Appointment of Counsel, Dkt. No. 6. Without counsel, Plaintiffs cannot assert claims on behalf of the "Binford Community."

## B. Plaintiffs' First and Second Causes of Action Related to the Alleged Seizure of Personal Property from Binford Road Fail.

Plaintiffs first and second causes of action for violation of the Fourth, Fifth, and Fourteenth Amendments based on the alleged "pattern and practice" of "summarily" seizing personal property from Binford Road fail because these conclusory allegations are insufficient to state a claim and contradicted by Plaintiffs' own evidence.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local

---

[1] Northern District Local Rules similarly require "Any party representing him or herself without an attorney must appear personally and may not delegate that duty to any other person who is not a member of the bar of this Court. A person representing him or herself without an attorney is bound by the Federal Rules, as well as by all applicable local rules. Sanctions (including default or dismissal) may be imposed for failure to comply with local rules." N.D. Cal., Civil L.R. 3-9. California law also prohibits any person from practicing law – which includes providing legal advice and counsel and the preparation of legal instruments – for another person or entity without a law license. *See* Cal. Bus. & Prof. Code § 6125; *see also Estate of Condon*, 65 Cal.App.4th 1138, 1142 (1998). Practicing law without a license is a misdemeanor and punishable by up to one year in jail. *See* Cal. Bus. & Prof. Code § 6126.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No.: 3:24-cv-03181-AMO

officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

The Fourth Amendment prohibits unreasonable searches and seizures. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012). A "seizure" of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *Id.* This includes the seizure of property, "even when that property is stored in public areas." *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir. 2021). The destruction of property is also considered a seizure. *Id.*

However, the Constitution does not prohibit County from removing personal property from a road right-of-way particularly where, as here, the property creates a danger to passing vehicles and the environment. California law expressly authorizes the removal of encroachments from the road right-of-way. Specifically, the road commissioner "may immediately remove, or by notice may require" the removal of any encroachment "which obstructs or prevents use of a county highway by the public," "which consists of refuse," or "[a]n encroachment which is a traffic hazard." Cal. Sts. & High Code § 1480.5(a)-(c). The notice required "shall require the removal of such encroachment within 10 days." *Id.* at § 1482. Marin County Code similarly prohibits the erection of structures "of any kind, whether permanent or temporary in character," including "any tent" on public property and further prohibits loitering on public property "in such a manner as will impede or block pedestrian traffic on sidewalks and into and out of business establishments and other buildings." MCC § 6.72.020. Although County has made the policy decision to withhold enforcement of occupied vehicles on Binford Road while alternative housing options are sought, this does not extend to storing personal property in the roadway because it is dangerous. Protecting public safety does not run afoul of the Constitution.

County has provided adequate due process before removing personal property. As discussed in greater detail below, the allegations in the Complaint demonstrate that County provide adequate notice before conducting cleanups of the right-of-way and a process to recover seized property that is non-hazardous. Courts have consistently held that due process protections like those utilized by County are sufficient under the Fourth, Fifth, and Fourteenth Amendments.

For example, in *Lavan*, the Ninth Circuit held that seizing and destroying unhoused plaintiffs' unabandoned property "meaningfully interfered with" the plaintiffs' possessory interests in the property, and that doing so summarily and "on the spot" made the seizure unreasonable under the Fourth

Amendment. *Lavan*, 693 F.3d at 1030-31. The court upheld a preliminary injunction prohibiting the city from summarily destroying homeless individuals' publicly stored personal property. *Id.* at 1030. In *Garcia*, the Ninth Circuit again held that during cleanups of homeless encampments, prohibiting unhoused individuals from moving their bulky items and instead immediately destroying them violated the individuals' Fourth Amendment rights. *Garcia*, 11 F.4th at 1119. However, the court "emphasize[d]" that its holding was limited in that "the government may not *summarily* destroy the unabandoned personal property of homeless individuals that is kept in public areas." *Id.* at 1124 (emphasis added).

Taken together, the Ninth Circuit's opinion in *Lavan* and *Garcia* emphasized that the *summary* nature of the destruction of the plaintiffs' property rendered the seizures unreasonable. Thus, under the Fourth and Fourteenth Amendment, unhoused individuals are entitled to meaningful notice and an opportunity to be heard before their unabandoned property is seized and destroyed. *Lavan*, 693 F.3d at 1032. Due process requires the government to "take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *Id.*

Since *Lavan* was decided, district courts have consistently ruled that notice provisions similar to the County's in the instant case meet constitutional requirements. For example, in *Sullivan v. City of Berkeley*, the district court ruled that the city's policy of providing 72 hours notice prior to removing a homeless encampment which included information for reclaiming personal property within 14 days was reasonable. *Sullivan v. City of Berkeley*, 383 F.Supp.3d 976, 982 (N.D. Cal 2019). There, the district court rejected arguments that the city was required to "disclose the precise date and time" it would enforce the removal notice or that that notice was insufficient because it did not list the street address of the storage facility where the property was being stored. *Id.* at 982-83.

In another case, the district court granted a city's motion to dismiss a Fourth Amendment claim brought by homeless individuals challenging the city's ordinance giving 24-hour notice prior to impounding personal property and requiring the personal property to be stored for 90 days prior to being discarded. *Cobine v. City of Eureka*, 250 F.Supp.3d 423, 435 (N.D. Cal. 2017). The court ruled that "Plaintiffs fail to make out a claim for violation of the Fourth Amendment with regard to the provision in the City ordinance giving notice and storing personal property left in public areas." *Id.*

More recently, a district court declined to extend a temporary restraining order that would have prevented the City of Oakland from seizing and destroying property during a planned and ongoing cleanup of a homeless encampment. *Jansko v. City of Oakland*, No. 3:23-cv-00035(WHO), 2023 WL 3029256, at *1 (N.D. Cal. April 19, 2023). The court ruled that under *Lavan* and *Garcia*, the city was prohibited from "summary" destruction of the plaintiffs' property, but it was not prohibited from seizing property after providing notice about the cleanup for a reasonable amount of time nor was the city prohibited from refusing to store property that was potentially hazardous. *Id.* at 3-4. "Indeed, in *Garcia*, the City Police had a separate action – uncontested by the plaintiffs – that provided for discarding and not storing property that 'constitute[d] an immediate threat to public health or safety or [was] evidence of a crime or contraband.'" *Id.* (quoting *Garcia*, 11 F.4th at 1116). As the court noted, "the touchstone of the Fourth Amendment is reasonableness." *Id.* at 4 n.2 (citing *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005). Thus, the court ruled that "plaintiffs are unlikely to succeed on the merits of their Fourth Amendment claims." *Id.*

Plaintiffs in the instant case acknowledge that County provided them with notice before conducting cleanups on Binford Road. *See* Complaint, Dkt. No. 1, at 15:20-23; *see also* Derning Declaration, Dkt. No. 1, at 18, 20; Silveria Declaration, Dkt. No. 1, at 25:20-22; Limeta Declaration, No. 1, at 31:17-18. Although courts have ruled that as little as 24-hour notice meets due process requirements, County provided at least 15-day notice before conducting its cleanups. Derning Declaration, Dkt. No. 1, at 18, 20. The notice provides information on how to recover *non-hazardous*, *non-perishable* personal property within 90 days – far more than the 14-day storage that courts have ruled is reasonable under the Fourth and Fourteenth Amendment. *See Sullivan*, 383 F.Supp.3d at 982. Accordingly, the factual allegations in the Complaint demonstrate that County has provided due process before removing personal property from the right-of-way on Binford Road.

The factual allegations also show that County's removal of personal property from the road was reasonable under the circumstances. According to the allegations, and the declarations attached to the Complaint, all three Plaintiffs "live in motor homes and tents" along Binford Road in the "narrow median where people are parked." Complaint, Dkt. No. 1, at 1:20-21, 2:5-11. The Complaint further alleges that Plaintiffs' motorhomes are parked "inches from a busy road." *Id.*, at 8:21-22. Mr. Derning's

declaration further proclaims that his motorhome is "45 feet by 103 inches wide," and the photo attached

to his declaration shows the vehicle parked precariously on the shoulder, approximately 12 inches from

the "fog line" on the edge.  Derning Declaration, Dkt. No. 1, at 15:25, 22.  The photo also appears to

show numerous bicycle components or other debris scattered around the vehicle creating a hazard to

passing vehicles.  *Id.*  Mr. Derning acknowledges that the personal property that is alleged to have been

"seized" was "outside" and "around my trailer" within the road right-of-way, notwithstanding County's

notice advising that "[t]hese items obstruct or prevent the use of a county highway by the public and will

be subject to immediate removal if not removed in the next 15 days."  Complaint, Dkt. No. 1, at 15:8-11.

Derning Declaration, Dkt. No. 1, at 20.

Plaintiff Bonnie Silveria's declaration also demonstrates that she has been living in a trailer along

Binford Road for more than one year and had a "yard" around her trailer including potted plants, turf

grass, a barbeque, patio furniture, and an awning.  Complaint, Dkt. No. 1, at 25:17-20.  The photos

attached to the Silveria declaration show the proximity of the encroachments to Binford Road – a

heavily trafficked thoroughfare.  Complaint, Dkt. No. 1, at 28, 30.  She also acknowledges that she

received notice to remove the encroachments, but she neglected to do so within the 15-day period.  *See*

Silveria Declaration, Dkt. No. 25, at 25:20-21.

Similarly, plaintiff Elgio Limeta's declaration states that he lives "in a small house I built myself"

next to Binford Road.  Limeta Declaration, Dkt. No. 1, at 31:15-17.  He further notes that "[c]ars go very

fast [on Binford Road] and our homes are literally next to the road."  Simply stated, the factual

allegations demonstrate that the seizure of property from the Binford Road right-of-way is reasonable

under the circumstances.  According to their own claims, Plaintiffs' proximity to Binford Road is

dangerous and Defendants have a responsibility to the public at large to minimize the encroachment

onto Binford Road to protect public health and safety.

Our Supreme Court recently held that enforcement of anti-camping ordinances is not cruel and

unusual punishment under the Eighth Amendment to the Constitution, and local governments are not

prohibited from enforcing ordinances similar to County's ordinance noted above.  *City of Grants Pass v.*

*Johnson*, No. 23-175, 2024 WL 3208072, at *7 (U.S. June 28, 2024).  County has elected to refrain from

enforcing state law and Marin County Code that would force the immediate removal of all illegally

parked vehicles on Binford Road and has instead decided to focus its efforts on long-term solutions such as finding alternative housing placements and providing job search assistance.  As the Court noted in *Grants Pass*: "Homelessness is complex.  Its causes are many.  So may be the public policy responses required to address it."  *Id.*  While County is actively engaged with Binford residents and community partners to provide long term solutions, County is still required to maintain a minimum level of safety and security to protect vehicle traffic attempting to use Binford Road and also for the individuals who are living there.  Plaintiffs' lawsuit demanding that they be allowed to store personal property in the right-of-way is unproductive, and, more importantly, is not a protected right under the Constitution.

### C.   Plaintiffs' Monell Claim Is Similarly Insufficient.

Plaintiffs also attempt to assert separate claims for alleged constitutional violations against the Marin County Sheriff's Office and/or the County of Marin.  There are no factual allegations to support these claims under Section 1983.

Municipalities are "persons" under Section 1983 and may therefore be liable for causing constitutional deprivation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  However, "[a] municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents."  *Long*, 442 F.3d at 1185.  "Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible."  *Id.*  To state a claim under *Monell*, a plaintiff must show:  "(1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights."  *Id.* at 1186.

Again, despite the conclusory allegations, there are no facts to support a *Monell* claim against the County of Marin or the Marin County Sheriff's Office.  Even assuming Plaintiffs had demonstrated a violation of their constitutional rights (which they have not), the Complaint does not allege sufficient facts demonstrating that County or employees had a policy or custom amounting to deliberate indifference to their protected rights, or that the policy or custom was the moving force behind the alleged violation.  Rather, the Complaint merely alleges, in conclusory statements, that defendant Julia Barnes "implemented a pattern and practice for the County of Marin, a custom of summarily seizing and

destroying the property of Plaintiffs during weekly cleanups, and has done so on multiple occasions." Complaint, Dkt. No. 1, at 6:1-3.

However, the factual allegations do not support this conclusion. As discussed above, the factual allegations demonstrate that County provided adequate notice about the planned cleanups and that County's stated policy is to store non-perishable and non-hazardous material for 90 days. To the extent Plaintiffs contend that Defendants failed to comply with this policy, the allegations do not sufficiently allege that County has ratified these actions, even assuming they occurred, which they did not. Nothing in these allegations supports a *Monell* claim. The Complaint does not state a "threadbare recital of the elements" for a *Monell* claim let alone a cognizable cause of action.

### D.  <u>Plaintiffs' Third and Fourth Causes of Action for Substantive Due Process and "State Created Danger" Fail.</u>

Plaintiffs' "state created danger" claim also fails because there must be "particular allegations" demonstrating that Defendants affirmatively placed Plaintiffs in an "inherently dangerous situation" beyond those "generalized dangers of living on the street" that preexisted the state action. *See Cobine v. City of Eureka*, 250 F.Supp.3d 423, 433 (N.D. Cal. 2017). The Complaint does not contain sufficient facts to state a cognizable claim.

Generally, there is no legal duty on the party of government to protect the life, liberty, and property of its citizens against invasion by private parties. *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, there are two exceptions to this general rule: "(1) the 'special relationship' exception; and (2) the 'state creation' exception." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). Here, Plaintiffs assert the latter exception.

To prevail under a state created danger theory, a plaintiff must show: (1) There was "affirmative conduct" on the part of the state actor exposing the plaintiff "to a foreseeable danger that she would not otherwise have faced." (2) The state actor must act with "deliberate indifference" to a "known or obvious danger." *Martinez v. High*, 91 F.4th 1022, 1028-29 (9th Cir. 2024); *see also Marguia v. Langdon*, 61 F.4th 1096, 1111 (2023); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). In the instant case, the Complaint fails to meet either requirement.

First, there are insufficient factual allegations demonstrating that Defendants' "affirmative

conduct" created or exposed Plaintiffs "to danger they otherwise would not have faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006). Rather, the salient allegations in the Complaint are that defendant Barnes and Deputy Thompson purportedly "took affirmative actions against [Plaintiffs] depriving them of the ability to have enclosures for their dogs on Binford [R]oad, as well as to have shade structures for themselves and their pets." Complaint, Dkt. No. 1, at 8:18-20. Plaintiffs further allege that Defendants' "affirmative conduct of seizing Bonnie Selveria's dog gate, and depriving Sean Derning of his means to have a dog enclosure, both Plaintiffs dogs were hit by cars and died." *Id.* at 8:25-26.

Even assuming the "state created danger" doctrine applies to chattel – a dubious proposition[2] – courts have consistently rejected claims like the one at bar. For example, in *Cobine v. City of Eureka*, the district court ruled that unhoused individuals had not stated a plausible claim based on allegations the city's forced eviction from a homeless encampment and prohibition against residing in their own tents on public land caused them to reside and sleep "on the street in unfamiliar areas, and without the support of the community, reder[e]d them vulnerable to assault, theft, harassment, and worse." *Cobine v. City of Eureke*, 250 F.Supp.3d 423, 433 (N.D. Cal. 2017). Rather, the court dismissed the state-created danger/deliberate indifference claims because there were no "particular allegations" that the state action "put the Plaintiffs in an inherently dangerous situation, [and] the Court is bound to find that the generalized dangers of living on the street preexisted Plaintiffs' relocation from the [homeless encampment]. *Id.* at 433.

In another case, the district court rejected a state-created danger claim concerning unhoused individuals because the plaintiffs had not "sufficiently alleged well-pleaded facts plausibly suggesting

---

[2] Defendants have been unable to find any caselaw suggesting that a government entity can be held liable under the state created danger for alleged injuries related to chattel as opposed to physical injuries to the plaintiff. Indeed, the Ninth Circuit recognizes liability under substantive due process where government action places a *person* in a situation of known danger with deliberate indifference to their *personal* or *physical* safety. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006); *see also Grubbs*, 974 F.2d at 123 (holding state employees could be liable for the rape of a registered nurse assigned to work alone in the medical clinic of a medium security custodial institution with a known, violent sex-offender); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (holding as viable a state created danger claim against police officers who, after finding a man in grave need of medical care, cancelled a request for paramedics and locked him inside his house); *Munger v. City of Glasgow*, 227 F.3d 1082 (9th Cir. 2000) (holding police officers could be held liable for the hypothermia death of a visibly drunk patron after ejecting him from a bar on a bitterly cold night).

that the City has taken the type of affirmative steps to place an individual in a known and likely danger to satisfy the deliberate indifference standard . . . [a]dditionally, the difficulties the homeless individuals camping at the temporary campground may face are largely identical to those they would face while camping elsewhere in the City." *Hous. is a Hum. Right Orange Cnty. v. Cnty. of Orange*, No. 19-cv-388, 2019 WL 6481311, at *12 (C.D. Cal. Aug. 12, 2019); *see also Wills v. City of Monterey*, 617 F.Supp.3d 1107, 1124 (N.D. Cal. 2022) (rejecting state-created danger claim based on enforcement of municipal code section prohibiting camping because it did not expose plaintiff "to a danger which she would not have otherwise faced."); *Reed v. City of Emeryville*, 568 F.Supp.3d 1029, 1039-40 (N.D. Cal. 2021) (rejecting state created-danger claim based on allegations that congregate shelter setting would exacerbate the plaintiffs' mental health impairments because city did not place defendants in a more dangerous situation than they had been in).

Simply stated, Defendants are not legally required to protect Plaintiffs (or their pets) from the inherent dangerous associated with being unhoused. Although Defendants have taken steps to reduce the health and safety threats posed to all individuals living on Binford Road, such as providing handwashing stations, blackwater pump out services, portable bathrooms, and garbage pickup, the threats inherent to being unhoused remain. As Plaintiffs acknowledge, Binford Road is a busy public road – which is the reason long-term parking is prohibited. However, there are no factual allegations in the Complaint that Defendants "affirmatively" created this danger or that the dangers are any greater than those that preexisted Plaintiffs' decision to park their RVs on Binford Road. Accordingly, Plaintiffs have not alleged sufficient facts to meet the first requirement for a state created danger claim.

Second, there are insufficient factual allegations to establish that Defendants acted with "deliberate indifference" to a "known or obvious danger." "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel*, 648 F.3d at 974 (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "This standard is higher than gross negligence and requires a culpable mental state." *Murguia*, 61 F.4th at 1111. The state actor "must 'recognize the unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" *Id.* (quoting *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021).

There are no allegations in the Complaint – even conclusory allegations – that Defendants "intended" to expose Plaintiffs (or their pets) to harm.  The most generous interpretation of the factual allegations is that Defendants would not allow Plaintiffs to erect or maintain pet enclosures in the "narrow median where people are parked" – because said placement is a danger to passing vehicles – or that Defendants "seized" the enclosures during one of the Binford Road cleanups – after Defendants gave Plaintiffs notice to remove all personal property from the right-of-way.  Even assuming the state created danger doctrine applies to chattel (which it does not), and further assuming that the danger is greater than the dangers generally faced by unhoused individuals (which it is not), Plaintiffs have not, and cannot, allege facts demonstrating that Defendants were "deliberately indifferent" to a known danger.  Accordingly, this claim fails.

E.    **The Fifth Cause of Action for Alleged Violation of the Americans With Disabilities Act Fails.**

Plaintiff Sean Derning brings an additional claim under the ADA but it lacks a cognizable legal theory and sufficient facts to make a claim.  He requests "extra space" to engage occupational therapy related to his alleged disability.  Complaint, Dkt. No. 1, at 11:20-24.

The relevant statutory language of the Americans with Disabilities Act provides:  "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation or to be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Title II emphasizes 'program access' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons."  *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014).

To make a claim under Title II of the ADA, the plaintiff must prove that: (1) he is a "qualified individual with disability," (2) he was "excluded from participation in or denied benefits of a public entity's services, programs, or activities or were otherwise discriminated against by the public entity," and (2) the "exclusion, denial of benefits, or discrimination was by reason of their disability."  *See Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001).

Here, the Complaint does not identify the County's service, program, or activity that Mr. Derning has purportedly been excluded from nor does the Complaint allege sufficient facts to support a cause of

action against Defendants.  As discussed above, County is providing certain services to people living at Binford Road including portable bathrooms, handwashing stations, trash pickup, and RV pump out services.  There are no allegations that Mr. Derning is being excluded from these services or that he has been discriminated against.  Rather, the Complaint merely alleges that he has requested "an accommodation from Michael Thompson that he needs extra space to do occupational therapy to manage these disabilities."  Complaint, Dkt. No. 1, at 11:23-24.  However, County is not providing "occupational therapy" to anyone on Binford Road nor is it providing "space" to anyone to conduct such services.  Accordingly, Mr. Derning's claim that he has been denied access to services fails.

Although Defendants strenuously deny that Mr. Derning made a request for an "accommodation" prior to filing the instant lawsuit, Defendants are required to accept the allegation as true for purposes of the instant motion.  Nevertheless, it should be noted that County has a dedicated Disability Access Manager/ADA Coordinator to ensure that all County programs, services, and facilities are accessible to and usable by individuals with disabilities.  Nowhere in the Complaint does Mr. Derning allege that he requested an accommodation from County's ADA Coordinator, and instead he claims that he contacted Deputy Thompson – again, an allegation Deputy Thompson strenuously denies.  Thus, even assuming County were providing a service that Mr. Derning is having trouble accessing due to his alleged disability, he has not alleged sufficient facts demonstrating that he made a proper request.

Furthermore, the "accommodation" Mr. Derning is requesting is not "reasonable."  "Though the failure to provide modifications in services can constitute discrimination, the ADA requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided.  *See Tennessee v. Lane*, 541 U.S. 509, 532 (2004); *Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir. 2002). Where programs are designed to address risks to the public, "reasonableness depends on the nature of the risk, whether the proposed modification would affect the agency's ability to address the risk, and the probability of worsening the risk if the agency is forced to alter its programs."  *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 862 (9th Cir. 2022) (citing *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996)).

In *Where Do We Go Berkely*, the Ninth Circuit held that Caltrans did not violate the ADA when it moved to clear a homeless encampment along the freeway because preventing Caltrans from doing so

---

16

would be a "fundamental alteration" of its program or service.  *Where Do We Go Berkeley*, 32 F.4th 852 at 862.  There, the district court issued a sixth month injunction based on allegations that Caltrans' had implemented a program regarding the removal of homeless encampments and/or that the plaintiffs had stated a plausible claim that the clearing the encampments would violate Title II of the ADA, which prohibits a public entity from discriminating against disabled persons.  *Id.* at 860.  The Ninth Circuit disagreed and vacated the injunction.

The Ninth Circuit upheld Caltrans's encampment removal policies and vacated the district court's injunction because the public safety risks associated with allowing the encampment to stay were significant, and furthermore, the injunction would be a fundamental alteration in Caltrans's program as it would force Caltrans to house individuals, which was not within the scope of its existing programs and services.  *Id.* at 862-63.  In reaching this conclusion, the court noted that the ADA requires "only 'reasonable modifications' that would not fundamentally alter the nature of the service provided." *Id.* at 862 (quoting *Tennessee,* 541 U.S. at 532).  "[I]n no event is the entity required to undertake measures that would impose an undue financial burden or administrative burden  . . . or effect a fundamental alteration in the nature of the service."  *Id.*  "[P]ublic entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons."  *Id.* (quoting *Townsend v. Quasim*, 328 F.3d 511, 5188 (9th Cir. 2003)).  Accordingly, the Ninth Circuit held that the district court erred because the order "effectively asked Caltrans to house [p]laintiffs on its property until [p]laintiffs found new housing, with no regard to safety risks that make clearing level 1 encampments so critical." *Id.*  "Caltrans does not provide people with housing solutions and cannot make clearing level 1 encampments dependent on when the people living there can relocate."  *Id.*

So to here, the requested "accommodation" is tantamount to a demand that County provide "space" in a public right-of-way for storing personal property without regard to the health, safety, and environmental dangers such a demand would entail.  Providing space for individuals to engage in occupational therapy is not an existing program or service being provided by County.  Though County has postponed enforcing California law and Marin County Code with respect to long-term parking on Binford Road, County has never permitted individuals to store personal property in the right-of-way, nor is requiring County to do so a "reasonable accommodation."  Giving Mr. Derning a special right to store

his personal property in the right-of-way would significantly expand the services County provides at Binford Road, and, as such, is not required by the ADA.

## V.    **CONCLUSION**

Based on the foregoing, Defendants respectfully request that this Court grant the motion to dismiss the Complaint and each cause of action alleged therein against each defendant.

Dated: July 25, 2024

OFFICE OF THE COUNTY COUNSEL,
COUNTY OF MARIN


_/s/_ Jacy C. Dardine
Jenna Brady
Jacy C. Dardine
Attorneys for Defendants
MARIN COUNTY SHERIFF'S OFFICE,
MICHAEL THOMPSON, JULIA BARNES, and
COUNTY OF MARIN

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No.: 3:24-cv-03181-AMO