UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| BONNIE SILVERIA, et al., | Case No. 24-cv-03181-AMO |
|---|---|
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| MARIN COUNTY SHERIFF'S DEPARTMENT, et al., | Re: Dkt. No. 20 |
| Defendants. | |

Before the Court is a motion to dismiss filed by the County of Marin, Sheriff Deputy Michael Thompson, the Marin County Sheriff's Department, and Julia Barnes ("Defendants"). Sean Derning, Bonnie Silveria, and Elgio Limeta ("Plaintiffs"), representing themselves, oppose the motion, which is fully briefed and suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing currently set for March 20, 2025 is **VACATED**. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.[1]

Plaintiffs Derning, Silveria, and Limeta are unhoused, sheltering along Binford Road in Marin County. ECF 1 ("Compl.") at 1-2. In this action, they allege claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments.[2] *Id.* at 5-10. Plaintiff

---

[1] This order assumes familiarity with the factual allegations in the complaint, the procedural background of this litigation, and the parties' arguments as set forth in the briefing on the motion to dismiss.

[2] Plaintiffs also purport to name the Binford Community as a plaintiff. *Id.* at 2. This is improper, as Plaintiffs, who are not lawyers, can only represent themselves. *See C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear *in propria persona* in [their] own behalf, that privilege is personal to [them]"). Accordingly, the Court has not considered any claims purportedly asserted on behalf of the Binford Community.

1    Derning additionally asserts a claim for violation of Title II of the Americans with Disabilities

2    Act, 42 U.S.C. §§ 12131, *et seq.* Because the gravamen of Plaintiffs' claims is the seizure and

3    destruction of their property, the Court addresses the claims under the Fourth, Fifth, and

4    Fourteenth Amendments first.

5            Plaintiffs allege that their belongings were seized and destroyed without just

6    compensation, legally mandated storage, or a meaningful opportunity to retrieve their possessions

7    in violation of the Fourth, Fifth, and Fourteenth Amendments. "Because homeless persons'

8    unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, the

9    C[ounty] must comport with the requirements of the Fourteenth Amendment's due process clause

10   if it wishes to take and destroy them." *See Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th

11   Cir. 2012) (citation omitted). In addition, "[t]he Fourth Amendment protects Plaintiffs and other

12   homeless individuals' retreats . . . ." *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 434 (N.D.

13   Cal. 2017). Under the Fourth Amendment, the inquiry is whether the County acted reasonably in

14   seizing Plaintiffs' possessions. *Id.* (internal quotations and citation omitted). "A seizure

15   conducted without a warrant may still be reasonable if the official believes the property is

16   abandoned . . . , believes the property poses an immediate threat to public health or safety . . . , or

17   holds the property for its return and notifies the property owner . . . ." *Prado v. City of Berkeley*,

18   No. 23-CV-04537-EMC, 2024 WL 3697037, at *12 (N.D. Cal. Aug. 6, 2024). But "[a]bsent these

19   preconditions, a seizure is unreasonable." *Id.*

20           Here, Plaintiffs plausibly allege that Defendants took unabandoned, non-hazardous

21   property from their shelters, such as drinking water and other necessities, without providing

22   legally mandated storage or a meaningful opportunity to retrieve the items. Plaintiffs allege that

23   they "had their valuables taken into 'storage' . . . only to find out all their belongings had been

24   destroyed." *See* Compl. at 2, 6. For Plaintiff Derning, these items included, among others, a bike

25   trailer he uses to "fetch water and food." *See* Derning Decl. ¶ 6.[3] For Plaintiff Silveria, these

---

[3] Each plaintiff has attached a declaration in support of their verified complaint and application for a temporary restraining order and preliminary injunction, all which were filed as a single combined document. The parties reference the declarations in their briefing, and the Court has accordingly considered the declarations in ruling on the instant motion.

2

items included, among others, fencing, an awning, and a little gate. Silveria Decl. ¶ 6. For Plaintiff Limeta, these items included, among others, potable water, a fridge, and a burner for cooking. Limeta Decl. ¶ 6, 9. The Court finds these allegations sufficient to state a plausible claim for relief under the Fourth and Fourteenth Amendments. In light of Defendants' statement that if "the Court determine[s] that Plaintiffs have stated a plausible claim at this stage in the litigation, Defendants concede that there is no legal authority that would allow them to dispose of non-hazardous personal property within 90-days[,]" *see* ECF 29 ("Supp. Br.") at 3, their motion to dismiss is **DENIED** as to Plaintiffs' claims that Defendants seized and destroyed property in violation of the Fourth and Fourteenth Amendments.[4]

Defendants' motion to dismiss is, however, **GRANTED** with respect to Plaintiffs' claim under the Fifth Amendment. To the extent Plaintiffs challenge the lack of notice in conjunction with the failure to provide just compensation under the Fifth Amendment, the takings clause only "requires compensation *in the event of otherwise proper interference amounting to a taking*." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005) (emphasis in original) (internal quotation marks and citation omitted); *see also Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) (explaining that "[w]hen the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation."). Plaintiffs allege no such interference here. Rather, they allege that Defendants acted unlawfully when they seized and destroyed their property as part of a clean-up of the Binford Road encampment. This is not actionable under the Fifth Amendment. *See Cooley v.*

---

[4] Plaintiffs, however, have failed to allege a plausible *Monell* claim against the County. *See Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) ("Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law."). Threadbare assertions of a policy, pattern, or practice, like the ones in Plaintiffs' complaint, are insufficient to state a plausible *Monell* claim. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability. Instead, plaintiffs must establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered.") (internal quotations and citations omitted; modification in original). Defendants' motion to dismiss is therefore **GRANTED WITH LEAVE TO AMEND** to the extent Plaintiffs seek to state a *Monell* claim against the County.

*City of Los Angeles*, No. 218CV09053CASPLAX, 2019 WL 1936437, at *5 (C.D. Cal. May 1, 2019) (dismissing Fifth Amendment takings claim where the unhoused plaintiffs alleged that the defendant's seizure of their property was unlawful rather than a proper interference requiring just compensation and where there were no allegations that the alleged seizure that occurred during an " 'area cleaning' " was made pursuant to powers of eminent domain). For these reasons, Defendants' motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to Plaintiffs' claims under the Fifth Amendment.

Defendants' motion is also **GRANTED** as to Plaintiffs' substantive due process claim under the Fourteenth Amendment. In their opposition, Plaintiffs state that they "submitted a Fourteenth Amendment Claim regarding the death of two dogs that occurred after Sheriffs took away dog fences . . . ." ECF 23 ("Opp.") at 7. Plaintiffs allege that Defendants deprived them of the ability to have enclosures and shade structures for their pets along Binford Road. Compl. at 8. According to Plaintiffs, it was foreseeable that without an enclosure, a dog could be hit by a car, and that because Defendants removed the enclosures Plaintiffs had set-up for their pets, their dogs were hit by cars and died. *Id.* Additionally, Plaintiffs Silveria and Limeta still own dogs, and those pets are likely to get hit by cars or suffer unnecessarily unless they have some small, enclosed area with shade, water, and food. *Id.* at 9.

These allegations do not state plausible claim for relief for three reasons. First, the loss of a pet under the circumstances alleged here is not legally cognizable under the Fourteenth Amendment. *See Maglaya v. Kumiga*, No. 14-CV-3619, 2015 WL 4624884, at *6 (N.D. Ill. Aug. 3, 2015) (dismissing alleged deprivation of property – the killing of the plaintiff's dog – as non-cognizable under the Fourteenth Amendment).

Second, even if the loss of a pet were actionable under the Fourteenth Amendment, Plaintiffs have not sufficiently pleaded the requisite action by Defendants. The lack of enclosures or shade structures that form the basis for Plaintiffs' claims, *see* Compl. at 8, are circumstances Plaintiffs would have faced notwithstanding any action by Defendants. Thus, the removal of Plaintiffs' pet enclosures did not "plac[e] Plaintiffs in an inherently more dangerous situation than they had faced previously." *See Cobine*, 250 F. Supp. 3d at 433 (dismissing substantive due

1 process claim where generalized dangers of living on the street preexisted plaintiffs' relocation to
2 encampment from which plaintiffs faced forced eviction by the city).

3       Third, even if Plaintiffs had adequately pleaded that Defendants engaged in conduct that
4 placed them in danger, the allegations in the complaint fail to plausibly allege that Defendants
5 undertook any action with deliberate indifference. As Plaintiffs allege in their complaint, the
6 County has designated Binford Road "as a permitted place [where] people experiencing
7 homelessness can reside." Compl. at 3. The County has personnel and contractors "working on
8 Binford Road [to] provid[e] housing services, trash removal, and bathroom services[,]" and the
9 County has received millions of dollars in state funding "to get everyone on Binford Road into
10 housing by August 2026." *Id.* The County offers those living along Binford Road "case
11 management," and despite the clean-ups that are the subject of some of Plaintiffs' claims, they
12 acknowledge that "the County of Marin is doing some good things on Binford [Road]." *Id.* at 1.
13 These allegations fall short of plausibly pleading the deliberate indifference required for a
14 Fourteenth Amendment claim, i.e., that Defendants recognized an "unreasonable risk and actually
15 intend[ed] to expose the plaintiff to such risks without regard to the consequences to the plaintiff."
16 *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (internal quotations and citation
17 omitted). For these reasons, Plaintiffs' Fourteenth Amendment claim is **DISMISSED WITH**
18 **LEAVE TO AMEND**.

19       Plaintiff Derning's claim under Title II of the ADA is also subject to dismissal. Derning
20 suffers from a chronic injury to his hand, post traumatic stress disorder, and anxiety. Compl. ¶ 4.
21 To manage these disabilities, he engages in occupational therapy by working on bicycles and
22 performing other tasks that improve the dexterity in his hand and help with his mental well-being.
23 *Id.* Derning requested an accommodation from Deputy Thompson, seeking extra space to do
24 occupational therapy so that he can manage his disabilities, and Thompson refused, warning that
25 the County could "come at anytime and take his belongings." *Id.* ¶¶ 5-7.

26       Liberally construed, these allegations fail to establish a viable ADA claim. Derning must
27 allege that "1) he is a 'qualified individual with a disability'; (2) he was either excluded from
28 participation in or denied the benefits of a public entity's services, programs, or activities, or was

5

1  otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or
2  discrimination was by reason of his disability." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135
3  (9th Cir. 2001). The ADA requires "only 'reasonable modifications . . . .' " *Where Do We Go*
4  *Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 862 (9th Cir. 2022). Assuming,
5  without deciding, that Derning has satisfied the threshold elements of his ADA claim, it
6  nonetheless fails as a matter of law. Plaintiffs describe Binford Road as "a narrow median" where
7  "cars go very fast[,]" and Plaintiffs "are parked literally next to the road." *See* Compl. at 2;
8  Silveria Decl. ¶ 8; Limeta Decl. at ¶ 11. Based on these allegations, requesting an additional
9  amount of space while Derning remains on Binford Road indefinitely is unreasonable as a matter
10 of law. *See Where Do We Go Berkeley*, 32 F.4th at 855 (vacating district court's preliminary
11 injunction order because "there [wa]s no serious question that the ADA" required Caltrans to
12 delay its plan to clear a high-risk encampment along the freeway by six months to grant plaintiff
13 an accommodation of additional time to relocate and find housing). For this reason, the ADA
14 claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

15 Plaintiffs may file an amended complaint curing the deficiencies discussed above by no
16 later than April 14, 2025. They may not add new claims or parties without a stipulation from
17 Defendants or leave of Court. If an amended complaint is not filed by April 14, 2025, the Court
18 will consider the original complaint operative, and Plaintiffs will be deemed as having elected to
19 stand on the complaint.

20 The Court is setting an extended deadline for the filing of the amended complaint so that
21 Plaintiffs may contact the Federal Pro Bono Project's Help Desk – a free service for pro se
22 litigants – by calling (415) 782-8982 or emailing fedpro@sfbar.org to make an appointment to
23 determine whether Plaintiffs qualify for possible appointment of pro bono counsel. More
24 information about the program is available online at the Court's website
25 <https://www.cand.uscourts.gov/about/court-programs/legal-help-desks/>.
26 ///
27 ///
28 ///

Should the parties wish to explore alternative dispute resolution before the deadline for Plaintiffs to file their amended complaint, they may file a stipulation and proposed order selecting an ADR process.

**IT IS SO ORDERED.**

Dated: February 13, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**